IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CENTURY SURETY COMPANY** | : CIVIL ACTION |
| | : |
| v. | : NO. 23-4903 |
| | : |
| **ACCURATE FREIGHT SYSTEMS CORP.** | : |

**MEMORANDUM**

**SCHMEHL, J.  /s/  JLS**                                                                         **NOVEMBER 12, 2024**

Plaintiff Century Surety Company ("Century") brought this action, seeking a declaration that Century has no duty to defend or indemnify Defendant Accurate Freight Systems Corp. ("Accurate Freight") under the Commercial General Liability ("CGL") coverage part of a Commercial Lines Policy issued by Century (the "Century Policy") in an action brought by Doodle Tech, Inc. ("Doodle Tech") against Accurate Freight in the Court of Common Pleas of Northampton County, Pa., ("the Underlying Action") or for the claims asserted against Accurate Freight in a Letter of Demand by Polipa North America, LLC ( "Polipa"). Century also seeks a declaration that it does not have a duty to defend under the Commercial Property coverage part of the Century Policy for the claims at issue and any coverage provided by this coverage part is limited to $10,000.00. The claims arise from a warehouse fire that occurred on April 4, 2023. Presently before the Court is Century's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted.

1

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion for judgment on the pleadings may be granted only when "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005). "When considering a motion for judgment on the pleadings, a court 'must accept as true all facts presented in the complaint and answer and draw all inferences in favor of the non-moving party[.]' " *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020) (quoting *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019)).

As with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the scope of what a court may consider in resolving a Rule 12(c) motion for judgment on the pleadings is necessarily constrained: a court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013)); *see Leithbridge Co.*, 464 F. Supp. 3d at 738. A court may also take judicial notice of certain undisputed facts. *See Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. CV 15-3435, 2017 WL 5668053, at *9 (E.D. Pa. Nov. 27, 2017).

Under Pennsylvania law[1], interpretation of an insurance contract is a question of law that is properly decided by the court. *Gardner v. State Farm Fire and Cas. Co.,* 544 F.3d 553, 558 (3d Cir.2008) (citing *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa.

---

[1] The parties do not dispute that this matter is governed by Pennsylvania law.

147, 938 A.2d 286, 290 (2007)); *Liberty Mut. Ins. Co. v. Treesdale, Inc.,* 418 F.3d 330, 334 n. 8 (3d Cir.2005); *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 900 (3d Cir.1997). When interpreting an insurance contract, the court must determine the intent of the parties "as manifested by the language of the written agreement." *Travelers Cas. & Sur. Co. v. Castegnaro,* 565 Pa. 246, 772 A.2d 456, 459 (2001). In construing the language of an insurance policy, the court must give effect to the reasonable expectations of the insured. *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc.,* 941 A.2d 706, 717 (Pa.Super.Ct. 2007). The "reasonable expectations" doctrine is "intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy." *UPMC Health System v. Metro. Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir.2004). Where the language of the policy is clear and unambiguous, the court must give effect to the plain language of the agreement. *Id.* When an ambiguity exists in a provision of an insurance policy, the provision must be construed in favor of the insured and against the insurer. *Meyer v. CUNA Mut. Ins. Soc'y,* 648 F.3d 154, 163–64 (3d Cir.2011); *Med. Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999); *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991). The burden of proving that a particular claim falls within the coverage of a policy is on the insured. *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1366–67 (1987).

To determine whether a claim may be covered by the terms of an insurance policy, the court must compare the coverage provided by the terms of the insurance policy with the factual allegations contained in the four corners of the complaint. *Am. &*

*Foreign Ins. Co. v. Jerry's Sport Ctr. Inc.,* 606 Pa. 584, 2 A.3d 526, 541(2010); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 896 (2006); *Mut. Ben. Ins. Co. v. Haver,* 555 Pa. 534, 725 A.2d 743, 745 (1999). As with any contract, the interpretation of an insurance policy begins with the language of the policy, which must be read as a whole and construed according to its plain language. *Meyer,* 648 F.3d at 163.

Century issued Commercial Lines Policy CCP1129597 to Accurate Freight with effective dates of 3/06/2023 to 03/06/2024 for its warehouse and distribution business. [ECF 1-5, p. 13.] The CGL coverage part of the Century Policy has a $1 million each occurrence limit and a $2 million general aggregate limit. *Id*.

In the Underlying Action, Doodle Tech alleges that Accurate Freight "is in the business of logistics and stores goods in the supply chain." ECF 20-1 at ¶ 4. "As part of its services, [Accurate Freight] offers warehouse and fulfillment center services at a warehouse located . . . in West Easton, Pennsylvania" (the "Warehouse"). *Id*. It is alleged that Accurate Freight is the sole manager and operator of the Warehouse. *Id.* at ¶ 5. Another entity named as a Defendant in the Underlying Action, Erek Brucha, LLC., is alleged to be the owner of the Warehouse. *Id*.  On May 16, 2018, Doodle Tech and Accurate Freight entered into an agreement pursuant to which Doodle Tech paid a fee to Accurate Freight to store its inventory in the Warehouse. *Id.* at ¶ 8. On April 4, 2023, there was a fire at the Warehouse. *Id*. at ¶ 10. Doodle Tech alleges that the fire caused a total loss to the Warehouse, its surrounding businesses and all inventory held therein. *Id.* As a result of the fire, Doodle Tech's inventory was destroyed. *Id.* at ¶12. Doodle Tech claims that at the time of the fire, the value of its inventory stored in the

Warehouse was approximately $6 million. *Id*. at ¶ 9. The nature of the inventory allegedly destroyed is not alleged.

The Underlying Action contains claims against Accurate Freight for Breach of Contract, Negligence: Res Ipsa Loquitor, Negligence, Promissory Estoppel, Declaratory Judgment and Unjust Enrichment against Accurate Freight. *See id.*

By letter dated August 22, 2023, Century, through its authorized claims administrator, informed Accurate Freight that Century would provide a defense for Accurate Freight in the Underlying Action, subject to a full Reservation of all Rights under the Century Policy. ECF 1-2. The August 22, 2023 letter also specifically informed Accurate Freight that Century reserved its right to file a Declaratory Judgment Action to determine whether it has a duty to defend and/or indemnify Accurate Freight with regard to the claims raised in the Underlying Action. *Id*. at p. 6.

By letter dated May 15, 2023, counsel for Polipa notified Accurate Freight that its inventory had been destroyed as a result of the April 4, 2023 fire at the Warehouse. [ECF 1-3.] According to a Letter of Demand attached to the May 15, 2023 letter, Polipa valued its destroyed inventory that was stored in the Warehouse at $127,692.00. *Id*. at p.4.  However, on a chart attached to the Letter of Demand, the "total amount" is listed as $141,978.56. *Id*. at p.7.

By letter dated September 14, 2023, Century, through its authorized claims administrator, informed Accurate Freight that the Century Policy does not provide coverage for Polipa's claim, as the Property Damage Exclusion of the CGL coverage part of the Century Policy expressly excludes coverage for property damage to personal property in the care, custody or control of the insured, Accurate Freight. [ECF 1-4.] The

5

September 14, 2023 letter expressly reserved all rights under the Century Policy and reminded Accurate Freight of its obligation to give notice to Century if Polipa filed a lawsuit with respect to its claim. *Id*. at pp. 5-6. Century claims it has not received notice of any lawsuit filed by Polipa against Accurate Freight.

The CGL coverage part of the Century Policy provides as follows:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
>
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

> **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>
> **c**. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

\* \* \*

ECF 1-5 at p. 14.

The CGL coverage part of the Century Policy contains the following exclusion:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> \* \* \*
>
> **j. Damage To Property**
>
> "Property damage" to:
>
> \* \* \*
>
> **(4)** Personal property in the care, custody or control of the insured;
>
> \* \* \*

*Id*. at p. 15 and pp.17-18.

The CGL coverage part of the Century Policy defines "Property Damage" as:

7

> 17. "Property Damage means:
>
> **a**. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b**. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> For the purposes of this insurance, electronic data is not tangible property.
>
> * * *

*Id*. at p. 28.

Doodle Tech (and Polipa) seek to recover damages to their respective personal property that was in the care, custody or control of Accurate Freight on the date of the fire. [ECF 1-2 at ¶¶ 8-10 and Polipa claim correspondence ECF 1-3.] However, the Property Damage Exclusion of the CGL coverage part of the Century Policy expressly excludes coverage for property damage to personal property in the care, custody or control of the insured. [ECF 1-5 at p. 15 and pp. 17-18.]

In Pennsylvania, the "care, custody or control" exclusion has been found to unambiguously apply to property being stored by an insured under contract, or property being possessed by an insured as a bailee. *See Hartford Fire Ins. Co. v. S. Barks & Sons, Inc. Co.*, 1999 WL 341972 at *8 (E.D. Pa. 1999) citing *Warner v. Employers' Liability Assurance Corp*., 390 Pa. 62, 133 A.2d 231, 233 (1957); *Slate Construction Co., v. Bituminous Casualty Corp*., 228 Pa. Super. 1, 5, 323 A.2d 141, 144 (1974); *Hertz Corp. v. Gray Smith*, 441 Pa.Super. 575, 582, 657 A.2d 1316, 1319

(1995); *Int'l Derrick & Equipment Co., v. Buxbaum*, 240 F.2d 536, 538 (3d Cir.1957). The Court in *Hartford Fire* also noted that the term "personal property" has been found to be unambiguous under Pennsylvania law and that it means "'everything that is the subject of ownership, not coming under the denomination of real estate.'" *Id*., quoting, *Rousseau v. City of Philadelphia*, 514 A.2d 649, 652 (Pa. Comm. 1986).

Since the alleged claims by Doodle Tech and Polita are for damage to their personal property while in Accurate Freight's care, custody, or control, the "care, custody, or control" exclusion clearly applies and, therefore, coverage for the claims at issue under the CGL coverage part of the Century Policy is excluded.

Accurate Freight argues that despite the clear language of the exclusion, the reasonable expectations of the parties should take precedent. See generally, *Moessner,* 121 F.3d at 903. According to Accurate Freight, "selling a commercial general liability and commercial property policy to a warehousing company that provides coverage for property damage, but not for the property damage to the only property that could get damaged at the warehouse, cannot, by any objective measure, be considered to meet the reasonable expectations of the insured."[2] [ECF 28 at p.15.]

Under Pennsylvania law, the reasonable expectations doctrine has been applied in "very limited circumstances" to protect a **non-commercial** insured from deception. *Madison Construct. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 109, n.8. (Pa. 1999) citing *Collister v. Nationwide Life Ins. Co*., 479 Pa. 579, 388 A.2d 1346 (1978) (applying doctrine to protect non-commercial insured from policy terms not

---

[2] "'There is usually some form of insurance available to cover injury to or destruction of the excluded property at a higher premium which is commensurate with the risk. The exclusion is to eliminate securing the same coverage under a liability policy at cheaper rates.'" *Slate Construction*, 323 A. 2d at 144 quoting *Cooke, Jr., Care, Custody or Control Exclusions,* 1959 Ins.L.J. 7, 9.

readily apparent), cert. denied, 439 U.S. 1089 (1979) and *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987) (applying doctrine to protect non-commercial insured from deception). *See also United States Fid. & Guar. Co. v. Lehigh Valley Ice Arena, Inc.*, 121 Fed. App'x. 976, 980 (3rd Cir. 2005). Here, however, Accurate Freight, is a commercial insured. Therefore, the reasonable expectations doctrine does not apply.

In addition, even if the reasonable expectations doctrine did apply to a commercial entity such as Accurate Freight, the doctrine would still not apply in this case since the terms of the CGL portion of the Century Policy are clear and unambiguous. *Id.* citing *Frain v. Keystone Insurance Co.*, 640 A.2d 1352, 1354 (Pa. Super. 1994). ("[A]n insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.")[3]

As noted above, the Century Policy also includes a Commercial Property coverage part. *Id.* at 52-68. The CP coverage part provides, in pertinent part, as follows:

> **A. Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> 1. Covered Property
>
> * * *

---

[3] In the alternative (Count II), Century requests that if the Court finds coverage under the CGL coverage part, the Court should declare that Century would still have no duty to defend Accurate Freight because the "Century Policy is excess of all other valid and collectable insurance for Accurate Freight for the loss at issue." ECF 25-2 at p. 2. Since the Court has found that there is no coverage to Accurate Freight under the CGL coverage part of the Century Policy because of the Property Damage Exclusion, the Court need not address this issue.

    c. **Personal Property Of Others** that is:

    (1) In your care, custody or control; and

    (2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater. However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

*Id*. at p. 53.

    **5. Coverage extensions**

    **b. Personal Effects And Property Of Others**

    You may extend the insurance that applies to Your Business Personal Property to apply to:

    \* \* \*

    (2) Personal property of others in your care, custody or control

    The most we will pay for loss or damage under this Extension is $2500 at each described premises. Our Payment for loss of or damage to personal property Of others will only be to the account of the owner of the property.

*Id*. at p. 60.

  However, pursuant to an Amendatory Endorsement – Limited Property Extensions, the limit of insurance for Personal Effects and Property of Others for the CP coverage part appears to have increased to $10,000. *Id.* at 82**.** The Amendatory Endorsement specifically states that it "modifies insurance provided under the following: BUILDING AND PERSONAL COVERAGE FORM, CP 0010" which is the potentially

**11**

applicable Coverage Form in the CP coverage part. *Id*. at 53-68. In addition, the Amendatory Endorsement also clearly states that it "replaces some of the Limits of Insurance for Coverages granted by the Coverage Forms to which this endorsement is attached." *Id.* at 82. The phase "Property of Others" would clearly encompass the inventories of Doodle Tech and Polita.

Therefore, the CP portion of the Century Policy clearly covers damage to the inventory of Doodle Tech and Polipa that was stored in the Warehouse. Indeed, Century admits as much. [ECF 25-2 at 13.] However, pursuant to the Amendatory Endorsement, damages for such coverage would be limited to $10,000.

Finally, unlike the CGL portion of the Century Policy, for which the Court has already determined that coverage is excluded, there is no language in the CP portion of the Century Policy that would require Century to defend or indemnify Accurate Freight in the Underlying Action. *Id.* at pp. 52-68.

For all the foregoing reasons, the Court grants Century's motion for judgment on the pleadings and orders declaratory relief as detailed in the accompanying Order.